[Cite as *State v. Graggs*, 2019-Ohio-361.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

     Plaintiff-Appellee,          :

                                      No. 18AP-491

v.                                      :          (C.P.C. No. 08CR-1098)

John Q. Graggs,                         :          (REGULAR CALENDAR)

     Defendant-Appellant.         :

D E C I S I O N

Rendered on February 5, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief:** *John Q. Graggs*, pro se.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, John Q. Graggs, appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief, without a hearing, due to the lack of subject-matter jurisdiction. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case has been before this court on numerous prior occasions. In a previous decision in this case, we summarized the operative facts underlying appellant's convictions as follows:

> Marcus Jones ("Jones") leased an apartment at 3566 East Main Street from which he and his friend, Jessie Lanier ("Lanier"), ran a drug trafficking operation, selling bricks of

cocaine for approximately $ 28,000 each. Around January 5, 2008, Jones hired Brock, a friend of Lanier's, to help guard the cocaine and money kept in the apartment.

On the evening of January 8, 2008, Jones and his cousin left Brock and Lanier in the apartment while they attended a local high school basketball game. Lanier later joined the two men at the game. After the game, which ended at approximately 8:30 p.m., Jones and his cousin drove to Jones' father's house. Around 9:00 p.m., Jones received a call from Lanier telling him to return to his apartment. When Jones and his cousin arrived at the apartment at approximately 9:15 p.m., Lanier was not there. However, Lanier and a girl arrived about two minutes later. The three men entered the apartment and found Brock lying face-down on the floor inside the apartment; he had been handcuffed and fatally shot in the back. The apartment had been ransacked; $35,000 in cash and Lanier's revolver were missing.

For the next 15 minutes or so, Jones and Lanier cleared the apartment of items related to their drug trafficking operation, including $ 17,000 in cash hidden under the mattress in the bedroom. Jones and Lanier placed the items in Lanier's car, which he then drove away. Thereafter, Jones and his cousin went to a nearby recreation center and called Jones' father. Around 9:45 p.m., Jones' father met the two men at the recreation center and urged them to call the police. Jones and his cousin returned to the apartment and called 911 at approximately 9:52 p.m.

Police responded to the 911 call at approximately 9:54 p.m. Evidence collected at the scene included the torn-off fingertip of a green latex glove found underneath Brock's body; the glove fingertip contained appellant's DNA. A revolver and a green latex glove similar to the glove fingertip found at the scene were recovered from appellant's residence. The revolver was later determined not to be the one that had fired any of the bullets recovered from the crime scene.

As of January 8, 2008, appellant was employed full-time earning $16.36 per hour. He lived in a separate household from his wife and had difficulty paying his bills, including his car payment. However, on January 9, 2008, the day after Brock's murder, appellant spent over $5,200 in cash at a local jewelry store. On January 14, 2008, he made a $ 2,900 payment on his car loan.

> Appellant was arrested on February 6, 2008. He told police that he knew Brock, but had not seen him in ten years. He also stated that he had never been to Jones' apartment and did not even know where it was located.
>
> At trial, the parties stipulated that on January 8, 2008, appellant made three calls between 7:42 and 7:43 p.m. from his cell phone in the vicinity of a cell tower one-half mile from Jones' apartment and made two calls on his cell phone between 8:54 and 8:57 p.m. in the vicinity of a cell tower near his home.

*State v. Graggs*, 10th Dist. No. 10AP-249, 2010-Ohio-5716, ¶ 3-9 ("*Graggs II*").

{¶ 3} Following a jury trial, appellant was convicted of aggravated robbery, kidnapping, and aggravated murder in connection with Brock's death. The trial court denied appellant's Crim.R. 33 motion for new trial and sentenced appellant to life in prison without parole. Appellant appealed to this court from the judgment of conviction and sentence. We affirmed appellant's convictions in *State v. Graggs*, 10th Dist. No. 09AP-339, 2009-Ohio-5975 ("*Graggs I*").

{¶ 4} In overruling appellant's assignment of error challenging the sufficiency and weight of the evidence, we noted, in *Graggs I*, that the following evidence supported appellant's conviction of the charges: (1) a piece of torn latex glove containing defendant's DNA was found under the victim's body despite defendant telling detectives he had never been to the apartment complex in question and had not seen the victim for 10 years; (2) phone records established calls from his cell phone were made in the vicinity of the apartment near the time of the shooting; and (3) testimony that $35,000 in cash was missing from the apartment, and defendant made large cash purchases at a jewelry store the day after the victim's death. *Id.* at ¶ 25.

{¶ 5} On November 10, 2009, appellant filed his first petition for postconviction relief under R.C. 2953.21(A)(1)(a), which the trial court overruled.[1] This court affirmed the trial court decision in *Graggs II*.

---

[1] Appellant alleged his trial counsel provided ineffective assistance by "(1) in stipulating to cell phone records without first consulting with him, and in failing to include in the stipulation, or otherwise submit, exculpatory cell phone records and testimony pertaining thereto; (2) in failing to prepare and attach to appellant's motion for new trial an affidavit from his wife supporting the allegation of juror misconduct; and (3) in failing to call Tierra Davis * * * to testify." *Graggs II* at ¶ 22.

{¶ 6} On August 8, 2013, appellant filed a motion for leave to file a delayed motion for new trial, pursuant to Crim.R. 33, alleging that newly discovered evidence had emerged, including the July 15, 2013 affidavit of Kelvin Bridges, which implicated Lanier in Brock's murder.  The trial court denied the motion, and we affirmed the trial court decision in *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 13 ("*Graggs III*").

{¶ 7} With respect to Bridges' affidavit, this court in *Graggs III* noted:

> The key issue is whether [appellant] knew or could have discovered through reasonable diligence within the time period provided under Crim.R. 33(B) that Bridges had potentially relevant information.  The Bridges affidavit does not directly address whether Bridges knew [appellant] prior to July 2013.  [Ugbe] Ojile attested in his affidavit that, when asked, Bridges indicated that [appellant's] name "didn't sound familiar, and he didn't think he knew him."  (Ojile Affidavit.)  Finally, in his own affidavit, [appellant] attested that, when asked by Ojile in July 2013 whether he knew Bridges, he responded that he did not.  As the trial court concluded, these statements suggest that [appellant] may not have known prior to July 2013 that Bridges potentially had information relating to the night of the murder.  However, we cannot conclude that the trial court abused its discretion by finding that the affidavits did not constitute clear and convincing evidence to establish that appellant could not have learned of the existence of the information Bridges claimed to possess within the time prescribed for filing a motion for new trial.

*Id.* at ¶ 11.

{¶ 8} Appellant filed a second motion for leave to file a motion for new trial on March 24, 2015, alleging that an inmate, Jamal Sealy, had told appellant that Lanier admitted to him that he had murdered Brock.  The trial court denied the motion, and this court affirmed the trial court's ruling in *State v. Graggs*, 10th Dist. No. 15AP-480, 2015-Ohio-3990, ¶ 16 ("*Graggs IV*").  In *Graggs IV*, this court concluded that even if appellant was unavoidably prevented from discovering Sealy's claims about Lanier, "Sealy's statement does not dispel the possibility that appellant was still involved in Brock's murder as an aider and abettor, as the jury apparently believed because it acquitted him of the firearm specifications."  *Id.* at ¶ 12.

{¶ 9}   Appellant filed a third motion for a new trial on July 14, 2016.  In support of his motion, appellant submitted a June 8, 2016 affidavit from Michael Shepard, who claimed to have been in the apartment at the time Brock was shot.  According to Shepard's affidavit, he and Lanier were the only ones in the apartment with Brock when Brock was shot.  Though Shepard did not see Lanier shoot Brock because he was in the bathroom, he avers that he heard three gunshots, and when he came out of the bathroom, he saw Lanier standing over Brock's body with a gun in his hand.  The trial court denied appellant's motion, and appellant appealed to this court.

{¶ 10}  We affirmed the trial court in *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454 ("*Graggs V*").  In concluding that Shepard's affidavit did not constitute newly discovered evidence, for purposes of Crim.R. 33(B), this court stated:

> The only evidence [appellant] has presented to satisfy his burden of clearly and convincingly demonstrating that he was unavoidably prevented from discovering Shepard's existence is that [appellant] did not know Shepard at the time of Brock's murder. But the mere fact that [appellant] did not know of Shepard's existence at that time is simply another way of saying that he did not know the evidence in question existed. This is nothing more than a description of all undiscovered evidence. The issue is whether [appellant] has shown that he was "unavoidably prevented from the discovery of the evidence," not whether he knew it existed or not.

*Id.* at ¶ 15.

{¶ 11}  On January 22, 2018, appellant filed the instant petition for postconviction relief pursuant to R.C. 2953.21.  In support of the petition, appellant submitted several affidavits including Bridges' July 15, 2013 affidavit, Shepard's June 8, 2016 affidavit, the August 25, 2017 affidavit of Albert Mullins, the October 25, 2017 affidavit of Kim Graggs,[2] and the December 13, 2017 affidavit of appellant.  Plaintiff-appellee, State of Ohio, did not file a response to the petition.  In his petition, appellant claimed he was denied his constitutional right to effective assistance of trial counsel due to counsel's failure to properly investigate the case.  Appellant alleges that had trial counsel conducted a proper investigation of his case and discovered the exculpatory evidence on which appellant now

---

[2] Kim Graggs merely authenticates a MapQuest search showing that the apartment where the crimes took place is just .7 miles from the car wash appellant frequented.  Appellant offered this evidence to explain how his cell phone records could have shown that he was in the area at the time the crime took place.

relies in support of his petition for postconviction relief, no reasonable jury could have convicted him. Appellant averred in his affidavit, in relevant part, as follows:

> During our second meeting, before Mr. Morgan [appellant's trial counsel] told me about the fingertip of the latex glove being found in the murder scene apartment with my DNA in it, he asked me how could my DNA get into a latex glove.
>
> I informed Mr. Morgan that I wore latex gloves all the time while working. I worked at Yenkin Magestie Paint and went through 15 to 20 pair each day.
>
> * * *
>
> After Mr. Morgan told me the location of the murder scene apartment, (3566 E. Main St), I informed Mr. Morgan that I had used the car wash at the service station at 3140 E. Main St all the time.
>
> * * *
>
> I gave Mr. Morgan a list of three guys who knew that I used latex gloves while washing cars at the car wash that had worked for me, which included Albert Mullins.
>
> * * *
>
> When I suggested to Mr. Morgan that someone could have tracked the fingertip in to the apartment, because I had never been to that apartment and it was right down the street from the car wash.
>
> Mr. Morgan told me that he was not going to trial with that.
>
> Mr. Morgan never said another word concerning Albert or my suggested theory.
>
> The first time I heard that Albert Mullins had worked for, stayed at or had anything to do with the Whitehall apartment or the people whom were involved in the drug trafficking from the Whitehall apartment was during my trial.
>
> In August 2017, it was the first time that I saw Albert Mullins since January 2008, before any arrest.
>
> During our third or fourth conversation, I was telling Albert about I had never been in the Whitehall apartment and did

> not know how a latex glove with my DNA got in to the Whitehall apartment.
>
> This is when Albert told me about how he had always took discarded latex gloves that we had used while working to the apartment to be reused there, it was not only mine that Albert took, but also others latex gloves.
>
> At no time before August 2017 was I aware of Albert collecting the discarded latex gloves of mine or others and taking the gloves into the Whitehall apartment or any place else.

(Appellant's Aff. at 1-2, attached as Ex. E to Jan. 22, 2018 Petition.)

{¶ 12} On April 11, 2018, the trial court denied the petition without a hearing. The trial court found it did not have jurisdiction to entertain appellant's successive petition for postconviction relief because appellant failed to make the required showing, pursuant to R.C. 2953.23(A)(1)(a), that he was unavoidably prevented from discovery of the facts on which his petition relies. In the alternative, the trial court concluded appellant did not present clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted him of robbery, kidnapping, and murder.

{¶ 13} Appellant timely appealed to this court from the judgment of the trial court.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Appellant assigns the following as trial court error:

> [1.] The trial court abused its discretion when it dismissed Mr. Graggs' successive post conviction petition when the record showed that (1) Mr. Graggs was unavoidably prevented from discovery of the facts upon which he relies, and (2) but for the constitutional error in his trial, no reasonable factfinder would have found Mr. Graggs guilty.
>
> [2.] The trial court abused its discretion when it failed to hold an evidentiary hearing on Graggs' successive post conviction petition when the full balance of the evidence dehors the record, set forth sufficient operative facts that demonstrate substantial grounds for relief.
>
> [3.] Graggs' Conviction and Sentence is voidable because Graggs was denied the effective assistance of counsel in violation of his right under the Sixth Amendment of the United States Constitution.

## III.  STANDARD OF REVIEW

{¶ 15}  "The appropriate standard for reviewing a trial court's decision to dismiss a petition for postconviction relief, without an evidentiary hearing, involves a mixed question of law and fact."  *State v. Lacking*, 10th Dist. No. 14AP-691, 2015-Ohio-1715, ¶ 8, citing *State v. Tucker*, 10th Dist. No. 12AP-158, 2012-Ohio-3477, ¶ 9.  "This court must apply a manifest weight standard in reviewing a trial court's findings on factual issues underlying the substantive grounds for relief, but we must review the trial court's legal conclusions de novo."  *Lacking* at ¶ 8.  For example, the question whether a court of common pleas possesses subject-matter jurisdiction to entertain an untimely or successive petition for postconviction relief is a question of law, which appellate courts review de novo.  *State v. Apanovitch*, ___ Ohio St.3d ___, 2018-Ohio-4744, ¶ 24 (slip opinion), quoting *State v. Kane*, 10th Dist. No. 16AP-781, 2017-Ohio-7838, ¶ 9.

## IV.  LEGAL ANALYSIS

### A.  Appellant's First and Second Assignments of Error

{¶ 16}  Because appellant's first and second assignment of error are interrelated, we will consider them together.  In appellant's first and second assignments of error, appellant argues because he made the required showing that he was unavoidably prevented from discovering the facts supporting his claim of ineffective assistance of trial counsel and that, but for trial counsel's ineffectiveness, no reasonable jury could have convicted him, the trial court erred when it dismissed his successive petition for postconviction relief without an evidentiary hearing.  For the reasons that follow, we agree the trial court erred in ruling on the petition, and we remand the matter to the trial court to reconsider the petition.

{¶ 17}  In his latest petition for postconviction relief, appellant contends his trial counsel's failure to conduct a proper investigation of his case amounted to a denial or infringement of his right to counsel as guaranteed by the Sixth Amendment to the U.S. Constitution and Section 10, Article I of the Ohio Constitution.  When a petition for postconviction relief is either untimely filed or is a successive petition, R.C. 2953.23 governs the trial court proceedings and provides, in relevant part, as follows:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or

successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was *unavoidably prevented from discovery of the facts upon which the petitioner must rely* to present the claim for relief * * *.

(b) The petitioner shows *by clear and convincing evidence* that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *.

(Emphasis added.)

{¶ 18} The Supreme Court of Ohio in *Apanovitch* recently concluded that "a petitioner's failure to satisfy R.C. 2953.23(A) deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition." *Id.* at ¶ 36. Accordingly, "a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing." *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999), citing *State v. Cole*, 2 Ohio St.3d 112 (1982). A court may dismiss a petition for postconviction relief without a hearing when the petitioner fails to submit evidentiary material "demonstrat[ing] that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun* at paragraph two of the syllabus.

{¶ 19} In support of the petition, appellant submitted several affidavits including Bridges' July 15, 2013 affidavit, Shepard's June 8, 2016 affidavit, Mullins' August 25, 2017 affidavit, the October 25, 2017 affidavit of Kim Graggs, and the December 13, 2017 affidavit of appellant. The trial court found it did not have jurisdiction to entertain appellant's successive petition for postconviction relief because appellant failed to make the required showing, pursuant to R.C. 2953.23(A)(1)(a), that he was unavoidably prevented from discovery of the facts on which his petition relies. In denying appellant's petition, without an evidentiary hearing, the trial court noted: "So far as the court can observe, the only 'new' material filed with this successive petition is a self-serving affidavit from [appellant], notarized on December 13, 2017, and a very short affidavit from Kim Graggs authenticating

a Map Quest [sic] search, notarized on October 25, 2017." (Apr. 11, 2018 Journal Entry at 1-2.) The trial court's decision does not mention Mullins' affidavit, even though Mullins' affidavit postdates all of appellant's prior postconviction motions and petitions.

{¶ 20} With respect to the Shepard affidavit, however, the trial court correctly determined appellant was not unavoidably prevented from discovery of the facts contained therein because appellant had previously submitted the same affidavit in connection with his July 14, 2016 motion for leave to file a delayed motion for new trial. In affirming the trial court's denial of the motion, this court agreed with the trial court that appellant was not unavoidably prevented from discovering the facts in the Shepard affidavit. Similarly, appellant previously submitted Bridges' affidavit to the trial court in support of his August 8, 2013 motion for leave to file a delayed motion for new trial. The trial court denied the motion, and this court affirmed the trial court in *Graggs III* on finding that appellant failed to show he could not have discovered Bridges' evidence within the time prescribed for a timely filed motion for new trial. *Id.* at ¶ 11. Similarly, the affidavit of Kim Graggs does not supply any facts that were not readily available to appellant at the time of his criminal trial. Thus, appellant cannot now rely on the facts in the affidavits of Shepard, Bridges, and Kim Graggs to establish the trial court's jurisdiction of his successive petition for postconviction relief.

{¶ 21} With regard to the Mullins affidavit, however, our review of the trial court decision shows the trial court failed to consider this affidavit in ruling on appellant's petition. As noted above, the trial court did not mention the Mullins affidavit when it listed the "new" evidence filed with the petition even though the affidavit postdated all of appellant's prior postconviction motions and petitions. Additionally, the trial court's discussion of the Mullins evidence is as follows:

> Albert Mullins is, likewise, not newly discovered. [Apellant's] 2017 affidavit states that in preparing for his trial "I gave Mr. Morgan a list of three guys who knew that I used latex gloves while washing cars at the car wash *** which included Albert Mullins." (Affidavit marked Ex. "E", at p. 1.) Thereafter, Mullins name came up during [appellant's] January 2009 trial. "The first time I heard that Albert Mullins had worked for, stayed at or had anything to do with the Whitehall apartment or the people whom [sic] were involved in the drug trafficking from the Whitehall apartment was during my trial." (Exhibit "E" p. 2.) According to [appellant], he finally

met with Mullins while both were in prison in August 2017. Subsequently "Albert told me about how he had always took discarded latex gloves that we had used while working to the apartment to be reused there, it was not only mine that Albert took, but also others['] latex gloves." (Ex. "E" p. 2).

On one hand, [appellant] claims that he suggested to his trial counsel in 2009 that "someone could have tracked the fingertip [of the incriminating glove] in to the apartment" but on the other hand asserts "[a]t no time before August 2017 was I aware of Albert collecting the discarded latex gloves of mine or others and taking the gloves into the Whitehall apartment." (Ex. "E" p. 2.) These statements appear contradictory. More importantly, *the absence of any statement from Mr. Mullins himself makes the whole discussion frustratingly incomplete.*

(Emphasis added.) (Apr. 11, 2018 Journal Entry at 2-3.)

{¶ 22} The trial court decision clearly shows that no consideration was given to Mullins' affidavit. Though the trial court did consider appellant's affidavit wherein appellant references Mullins' evidence, the trial court's decision shows it did not consult Mullins' affidavit before ruling on appellant's petition. Mullins' affidavit, which is attached as an exhibit to appellant's petition, provides, in relevant part, as follows:

1. There were many times that I and others had used latex gloves in the apartment of Marcus Jones, during the time he lived in the apartment where Fred Brock was killed.

* * *

9. I and others helped [appellant] paint other apartments and during these times he would always hand out and ware [sic] latex gloves.

10. Many times I and others would help [appellant] detail cars, plus two times a week I would help him wash his and his wife's car, [appellant] always wore larex gloves.

* * *

12. After we were done doing a job, I would clean up the area, which included rags, paper towels and latex gloves. I am not sure if [appellant] noticed me collecting the used latex gloves or even if he cared.

* * *

16. I never thought that [appellant] had anything to do with the murder, because I knew that he did not know Lanier or about the drug dealing going on in the apartment.

17. In late 2009 after finding out that the A.P.A. had a warrant out on me for non reporting to my parole officer, I moved to Tennessee.

18. In 2011, I was arrested in Tennessee and returned to Columbus. I was released from prison in 2013 and returned to Columbus.

19. In 2017, I was arrested and returned to the Correctional Reception Center, where I ran into [appellant]. It was the first time I had saw him since late January 2008.

20. During a conversation [appellant] stated that he had never been in the apartment and did not know how his DNA got in the apartment.

21. I was under the impression that he was talking about his blood, hair or fingerprints, until in another conversation he told me about it was a fingertip of a latex glove.

22. That is when I told him about how I had collected the used latex gloves from our worksites, which included his and took the gloves to the apartment many times to be reused.

23. Up to that point I had no idea that the used latex gloves I had collected to be reused in the apartment may have had anything to do with [appellant's] case.

24. At no time did anyone talk to me about anything to do with the murder of Brock or [appellant].

(Sic passim.) (Mullins' Aff. at 1-3, attached as Ex. C to Jan. 22, 2018 Petition.)

{¶ 23} Appellant argues that he was unavoidably prevented from discovery of the facts contained in Mullins' affidavit within the time permitted by R.C. 2953.21 to file a timely petition for postconviction relief. More particularly, appellant claims he was unaware of Mullins' potentially exculpatory testimony until August 2017, when he ran into Mullins in prison and that he was unable to learn of Mullins' evidence until that time. The trial court determined appellant was not unavoidably prevented from discovering Mullins' potentially exculpatory testimony because he had told his trial counsel that others, including Mullins, could have been the source of the latex glove containing his DNA and

because appellant learned during his trial that Mullins had been one of the individuals involved in the drug business at Brock's home.

{¶ 24} "[I]n order to obtain relief pursuant to Crim.R. 33(B) or R.C. 2953.23, a movant/petitioner must satisfy the threshold requirement of unavoidable prevention." *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, ¶ 27. " 'The phrase "unavoidably prevented" in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence.' " *Id.* at ¶ 28, quoting *State v. Howard*, 10th Dist. No. 15AP-161, 2016-Ohio-504, ¶ 21.

{¶ 25} The trial court denied appellant's petition for postconviction relief without an evidentiary hearing and, in doing so, did not consider Mullins' affidavit. In the context of a petition for postconviction relief, "the trial court may, under appropriate circumstances, deem affidavit testimony to lack credibility without first observing or examining the affiant." *State v. Taylor*, 10th Dist. No. 14AP-166, 2014-Ohio-3574, ¶ 16, citing *State v. Davis,* 10th Dist. No. 13AP-98, 2014-Ohio-90, ¶ 26, citing *Calhoun*, 86 Ohio St.3d at 284. "[I]n determining the credibility of supporting affidavits in postconviction relief, trial courts should consider all relevant factors, including: '(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.' " *Taylor* at ¶ 23, quoting *Calhoun* at 285. A trial court may also find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness or to be internally inconsistent, thereby weakening the credibility of that testimony. *Taylor* at ¶ 24. Such credibility determinations are within the trial court's discretion and an appellate court should not overturn the trial court's determinations absent an abuse of discretion. *Calhoun* at 285.

{¶ 26} If appellant's affidavit is believed, appellant's trial counsel told appellant that locating other possible sources of the latex glove containing his DNA was not an effective theory of innocence. According to appellant's affidavit, when he told trial counsel about other possible sources of the latex glove, including Mullins, trial counsel told appellant that

"he was not going to trial with that" and "never said another word concerning Albert or my suggested theory." (Appellant's Aff. at 1.) We also note the trial transcript in this case shows that local law enforcement were not able to locate Mullins prior to trial and did not know Mullins' whereabouts at the time of trial.[3] Accordingly, even though appellant learned during his criminal trial that Mullins was part of the drug ring that operated out of the apartment where Brock was killed, the record supports a finding that Mullins' whereabouts were unknown at that time.[4]

{¶ 27} Furthermore, if Mullins' affidavit is believed, Mullins left Ohio and "[i]n late 2009, after finding out that the A.P.A. had a warrant out on [him] for non reporting to [his] parole officer, [he] moved to Tennessee," and he did not return until 2011 when he was arrested in Tennessee and returned to Ohio. (Mullins' Aff. at 2.) Mullins averred that he was incarcerated until 2013 and then arrested again in 2017 when he ran into appellant at the Corrections Reception Center. Appellant averred that in August 2017, he had several conversations with Mullins and that Mullins eventually told him about the latex gloves. Thus, the evidence in the record, including Mullins' affidavit, provides some evidentiary

---

[3]Detective Steve Brown of the Whitehall Police Department testified at appellant's trial that he investigated the murder that occurred on January 8, 2008. Brown testified that police obtained DNA samples from several individuals who had either been seen in the area on or about the time of the crime or who were suspected of being involved in drug trafficking in the area including appellant, ones, Brian Boreman, Destiny Wade, and Lanier. Brown explained that he was attempting to match the DNA profiles of these individuals to the DNA evidence found on latex gloves in the apartment. On direct examination by the prosecutor, Brown testified as follows:

Q: A final name, Albert Mullins. Did the name Albert Mullins come in to
the picture at some point?
A. Yea.
Q. When did Albert Mullins' name pop up?
A. After [appellant's] arrest.
Q. Did you ever get an opportunity to speak to Mr. Mullins?
A. No.
Q. Did you ever meet Mr. Mullins?
A. No.
Q. Did you ever find Mr. Mullins?
A. Did not find him.
Q. So to this day, do you know where Albert Mullins is?
A. No.

(Jan. 16, 2009 Tr. Vol. IV at 615.)

[4] Under former R.C. 2953.21(A)(1)(b)(2), the 180-day period for filing a timely petition for postconviction relief commenced on May 14, 2009, when the trial transcript was filed with this court in appellant's appeal from the judgment of conviction and sentence and ended on November 10, 2010.

support for appellant's claim that he was unavoidably prevented from discovering the facts on which his petition relies until August 2017. Mullins' affidavit is dated August 25, 2017, and appellant filed his petition for postconviction relief on January 22, 2018.

{¶ 28} Because the trial court did not consider Mullins' affidavit and did not conduct a credibility analysis of the affidavits submitted in support of his petition, the trial court erred by dismissing the petition, without a hearing, on finding that appellant failed to show he was unavoidably prevented from discovering the facts on which his petition relies. Under the circumstances, any determination by this court of the merits of appellant's claim that he was unavoidably prevented from discovering the facts supporting his petition would be premature. *Calhoun* at 285. It is for the trial court, in the first instance, to conduct a credibility analysis of the affidavits submitted by appellant and to determine whether appellant is entitled to a hearing on the merits of the petition. *Id. See also* R.C. 2953.22(D).[5]

### 1. R.C. 2953.23(A)(1)(b) "but for the constitutional error."

{¶ 29} The trial court further concluded, pursuant to R.C. 2953.23(A)(1)(b), that "there is not clear and convincing evidence that, but for constitutional error at trial, [appellant] would have avoided criminal liability." (Apr. 11, 2018 Journal Entry at 3.) In reaching this conclusion, the trial court reasoned as follows:

> The[] mere fact that others using the Whitehall apartment for drug storage and trafficking *might have taken used latex gloves in to the apartment* – even a glove containing [appellant's] DNA – is not necessarily exculpatory for [appellant]. He too might have gone there, or so any jury might reasonably conclude when a piece of a latex glove was found near the body after the murder, and other evidence independently pointed toward [appellant]. Thus, the second requirement of R.C. 2953.23(A)(1)(b) has also not been met.

(Emphasis added.) (Apr. 11, 2018 Journal Entry at 3.)

{¶ 30} The trial court reached its conclusion under R.C. 2953.23(A)(1)(b) without the benefit of reviewing Mullins' affidavit. Our review of Mullins' affidavit leads us to the conclusion that the facts contained therein, if believed, cast doubt on the one piece of physical evidence submitted by the state that places appellant inside the apartment where

---

[5] We note that the trial judge who presided over appellant's criminal trial in 2009 is the same judge who ruled on appellant's 2018 petition for postconviction relief.

the crimes took place and contradicts appellant's statement to police that he had never been in the apartment where Brock was killed. Though the cell phone records "established that calls from appellant's cell phone were made in the vicinity of Marcus's apartment near the time of the shooting," absent the DNA evidence, the phone records alone do not prove appellant was in the apartment at the time the crimes were committed. *Graggs I*, 2009-Ohio-5975, at ¶ 25. Similarly, while appellant's spending spree the day after the crimes provides circumstantial evidence appellant may have come into possession of the $35,000 in cash stolen from the apartment where the crimes took place, the theory of guilt the state presented to the jury was based exclusively on appellant's presence in the apartment at the time Brock was shot.[6]

{¶ 31} In our view, it is one thing for *appellant* to aver that Mullins *might have* transferred a glove containing appellant's DNA to the apartment where the crimes took place but it is quite another for *Mullins* to aver that *he did, in fact*, physically transfer latex gloves containing appellant's DNA to the crime scene where a latex glove containing appellant's DNA was later found by police under Brock's lifeless body. Mullins' testimony provides an explanation of how appellant's DNA could be found on the tip of a latex glove near Brock's body without appellant ever being present in the apartment where the crimes took place. In the absence of DNA evidence found on the latex glove, there was no physical evidence to support a finding that appellant had ever been in that apartment. Under the state's theory of guilt, appellant could not have been convicted either as a principal offender or as an aider and abettor to murder, aggravated burglary, and kidnapping if he was not in the apartment with Brock at the time the crimes were committed. If appellant's affidavit is to be believed, he informed his trial counsel prior to trial that certain other individuals,

---

[6] In closing argument, the prosecutor told the jury the following:

> There's no other reasonable explanation for [appellant's] DNA being in a rubber glove at the scene of a murder other than the fact that he was wearing that glove and somehow that glove got broke apart and got ripped off when taking it off and left a piece of it there. Bad for him.

> No other reasonable explanation as to his DNA being in a rubber glove found at the scene of a homicide, and, again, ladies and gentlemen, in an apartment, by his own words, he's never been in in his life.

(Jan. 16, 2009 Tr. Vol. V at 771-72.)

including Mullins, might be the source of the latex glove containing appellant's DNA, but his counsel dismissed appellant's theory and refused to investigate the matter.

{¶ 32} As previously stated, the trial court's decision denying appellant's petition, without a hearing, shows the trial court did not give any consideration of Mullins' affidavit. The trial court found certain statements in appellant's affidavit "appear contradictory" but, in reaching that conclusion, the trial court acknowledged "the absence of any statement from Mr. Mullins himself makes the whole discussion frustratingly incomplete." (Apr. 11, 2018 Journal Entry at 3.) Thus, the trial court did not fully and fairly consider the relevant evidence submitted by appellant in support of his claim of ineffective assistance of trial counsel.

{¶ 33} "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." *Cole*, 2 Ohio St.3d at 114, citing *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). Broad assertions without a further demonstration of prejudice and conclusory allegations to the effect that a defendant has been denied ineffective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing. *Jackson* at 111. Generally, the petitioner satisfies his initial burden by submitting evidence of matters outside the record which raises a colorable claim of ineffective assistance of counsel. *State v. Hester*, 45 Ohio St.2d 71, 79 (1976). *See also State v. Bethel*, 10th Dist. No. 07AP-810, 2008-Ohio-2697, ¶ 33-34.

{¶ 34} For purposes of a successive petition for postconviction relief, in order to prove ineffective assistance of counsel, a petitioner must show, by clear and convincing evidence, that his lawyer's conduct fell below reasonable professional standards and that, but for trial counsel's ineffectiveness, no reasonable jury would have found him guilty of the offenses of which he was convicted. R.C. 2953.23(A)(1)(b); *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984); *State v. Johnson*, 88 Ohio St.3d 95, 108 (2000). Reasonable investigation is a critical component of competent representation, and the prejudicial failure to conduct reasonable investigation is ineffective assistance. *Strickland* at 690-91. "Counsel for a criminal accused has 'a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary.' " *Howard*, 2016-Ohio-504, at ¶ 25, quoting *Strickland* at 691.

{¶ 35} Because the trial court, in this case, did not consider Mullins' affidavit and did not conduct a credibility analysis of the relevant affidavits submitted in support of his petition, a determination by this court of the merits of appellant's claim of ineffective assistance of counsel would be premature. It is for the trial court, in the first instance, to conduct an evaluation of the credibility of the relevant affidavits and to make a determination whether appellant is entitled to an evidentiary hearing on the merits of his petition. Because the necessary credibility analysis is a matter within the discretion of the trial court, this court will not conduct the analysis in the first instance. *Calhoun*, 86 Ohio St.3d at 325.

{¶ 36} For the foregoing reasons, we hold the trial court erred when it denied appellant's petition without giving any consideration to Mullins' affidavit and without conducting the credibility analysis necessary to determine whether appellant is entitled to a hearing on his petition. R.C. 2953.23; *Apanovitch*. Accordingly, we sustain appellant's first and second assignments of error, in part, and remand this matter to the trial court for further proceedings on appellant's petition.[7]

## B. Third Assignment of Error

{¶ 37} In his third assignment of error, appellant contends that his convictions are "voidable" because he was denied the effective assistance of trial counsel. (Appellant's Brief at 20.) In light of our resolution of appellant's first and second assignments of error and our order remanding this matter to the trial court for further proceedings, appellant's third assignment of error is moot. App.R. 12(A)(1)(C).

---

[7] The trial court's alternative holding that res judicata bars appellant for raising his ineffective assistance of counsel claim because he has previously raised claims of ineffective assistance of trial counsel in state and federal court is also without merit. Appellant's discovery of the facts in Mullins' affidavit postdates all prior proceedings in this matter, either in state or federal court. Consequently, res judicata would not present a bar to appellant's petition for postconviction relief predicated on trial counsel's failure to investigate Mullins' evidence if the trial court determines, on remand, that appellant was unavoidably prevented from discovering the facts in Mullins' affidavit prior to August 2017. *See Kane*, 2017-Ohio-7838, at ¶ 15 (the purpose behind R.C. 2953.23 is to permit trial courts to consider factual information that may come to light after a defendant's trial).

## V.  CONCLUSION

{¶ 38}  Having sustained appellant's first and second assignments of error, in part, and having found appellant's third assignment of error moot, we hereby reverse the judgment of the Franklin County Court of Common Pleas and remand the matter for further proceedings consistent with this decision.

*Judgment reversed*;
*cause remanded.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____