[Cite as *State v. Brodbeck*, 2017-Ohio-7187.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-61 |
| v. | : | (C.P.C. No. 07CR-4014) |
| Darrin S. Brodbeck, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 10, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Timothy A. Smith*, for appellant. **Argued:** *Timothy A. Smith*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Darrin S. Brodbeck, defendant-appellant, appeals the January 3, 2017 decision and entry of the Franklin County Court of Common Pleas, in which the court denied his motion for leave to file a motion for new trial. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} In 2008, after trial, appellant was convicted of murder, an unclassified felony, tampering with evidence, a felony of the third degree, and domestic violence, a felony of the fifth degree. He was also convicted of the three-year firearm specifications attached to the murder and tampering with evidence counts. This court affirmed his conviction in *State v. Brodbeck*, 10th Dist. No. 08AP-134, 2008-Ohio-6961. On March 31, 2009, appellant filed an application for reopening of the appeal alleging that his appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not moving

to dismiss the charges on the basis that the state violated appellant's due process rights by destroying materially exculpatory evidence.  Appellant alleged that the state washed the hands of the victim prior to allowing additional analysis of the blood spatter.  We denied the application on June 4, 2009.

{¶ 3}  The victim in this case was appellant's girlfriend, Christine Turner.  At trial, appellant argued that Turner accidentally shot herself.  The facts of this case are summarized in our prior decision and will not be outlined here.  *See id.* at ¶ 5-35.  Now appellant attempts to present evidence that Turner committed suicide.

{¶ 4}  On October 28, 2016, appellant filed a motion for leave to file an untimely motion for new trial based on newly discovered evidence.  Plaintiff-appellee, State of Ohio, objected.  On January 3, 2017, the trial court denied appellant's motion for leave.  The court found that appellant had not satisfied the requirements of Crim.R. 33(B) and overruled the motion.

## II.  Assignment of Error

{¶ 5}  Appellant appeals and assigns the following single assignment of error for our review:

> The Trial Court Committed Prejudicial Error by Denying Appellant's Motion.

{¶ 6}  In support of his assignment of error, appellant asks the court to consider two issues:

> [First,] [i]n a death by contact gunshot wound to the side of the head, where the issue is whether it was suicide or murder, with experts on each side, the fact that the decedent had previously placed a loaded gun to her head and pulled the trigger, only surviving because it misfired, is the type of evidence requiring a new trial *if it meets the other requirements of newly discovered evidence.*
>
> [Second,] [w]here the facts upon which a petitioner must rely to present his claims are outside the trial record and unknown to the petitioner at the time of trial, and the petitioner was unable to discover the facts prior to the expiration of the 120-day deadline, should he be permitted to file a new trial motion?

(Emphasis added.)

### III.  Discussion

{¶ 7}   " 'In considering a trial court's denial of a motion for leave to file a motion for new trial, this court employs an abuse of discretion standard.' "  *State v. Armengau*, 10th Dist. No. 16AP-355, 2017-Ohio-197, ¶ 6, quoting *State v. Anderson*, 10th Dist. No. 13AP-831, 2014-Ohio-1849, ¶ 7.  A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable.  *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  " 'A review under the abuse-of-discretion standard is a deferential review.  It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments.' "  *Id.*, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 8}   Pursuant to Crim.R. 33(A), a new trial may be granted upon the motion of the defendant for an enumerated list of causes "affecting materially his substantial rights."  Although not specifically enumerated in his motion, appellant moved the trial court for leave to file a delayed motion for new trial under the grounds set forth in Crim.R. 33(A)(6).

{¶ 9}   Crim.R. 33(A)(6) states:

> When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 10}  Under Crim.R. 33(A)(6), a trial court may grant a motion for new trial based on the discovery of new evidence material to the defense that the defendant could not, with reasonable diligence, have discovered and produced at trial.  *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 5.  " 'Newly discovered evidence' is 'evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably

ignorant.' " *State v. Holzapfel*, 10th Dist. No. 10AP-17, 2010-Ohio-2856, ¶ 10, quoting *State v. Love*, 1st Dist. No. C-050131, 2006-Ohio-6158, ¶ 43.

{¶ 11} A motion for new trial based on newly discovered evidence must be filed within 120 days after the jury verdict or the court's judgment. Crim.R. 33(B). However, a trial court may grant a motion for leave to file a motion for new trial based on newly discovered evidence beyond the 120-day deadline in certain circumstances. First, the court must determine whether the defendant has met his burden of establishing by clear and convincing proof that he or she was " 'unavoidably prevented from the discovery of the evidence upon which he must rely.' " *Graggs* at ¶ 5, quoting Crim.R. 33(B). "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 19 Ohio App.3d 141, 145-46 (10th Dist.1984). Second, the trial court must determine whether the party seeking leave under Crim.R. 33 filed the motion for leave within a reasonable time after discovering the evidence supporting the motion under the circumstances. *Armengau* at ¶ 16; *State v. Warren*, 2d Dist. No. 26979, 2017-Ohio-853, ¶ 40.

{¶ 12} Here, the jury rendered its verdict in the criminal trial on the murder and tampering with evidence charges, and accompanying firearm specifications, on January 14, 2008. On the same day, the court found appellant guilty of the domestic violence charge, but found him not guilty as to the accompanying firearm specification. Appellant sought leave in this case on October 28, 2016, more than eight years after his jury verdict. Because appellant did not file his motion for new trial within the 120-day deadline stated in Crim.R. 33(B), he was required by the same rule to seek leave from the trial court before filing his motion for new trial.

{¶ 13} Appellant represents that there are three types of newly discovered evidence he should be granted leave to present in a motion for new trial. We examine each type below and consider whether the trial court abused its discretion in denying the motion for leave as to that particular evidence.

A. EVIDENCE OF PRIOR SUICIDE ATTEMPT

{¶ 14} First, appellant represents he has discovered evidence that, in a prior relationship, Turner had attempted suicide with a firearm resulting in hospitalization in a psychiatric ward. Appellant states that Turner's parents had been instrumental in

preventing such knowledge from coming to light and that because he has been incarcerated, and until recently, without representation, he was unable to discover such evidence. Appellant states that in October 2015, private investigator Dawn McComas agreed to conduct an independent investigation of his case. In November 2015, McComas was contacted by John Cleary, a pastor, who told her that long after appellant's conviction, a former family member of Turner told him that Turner had attempted suicide in summer 1997 by placing a loaded gun to her head and pulling the trigger. The former family member requested anonymity to avoid conflict with Turner's family. McComas attempted to corroborate the information by contacting area hospitals and found records of Turner having been admitted to Riverside Hospital in August 1997. She was unable, without subpoena power, to obtain detailed records, however, to verify the former family member's story. Appellant argues that a detective interviewed Turner's father and asked him if Turner had ever had mental health issues. According to appellant, Turner's father replied that Turner had only been hospitalized at 15 for alcohol abuse and did not state anything about a prior suicide attempt at the age of 27. Appellant argues that the Turner family deliberately misled the investigator.

{¶ 15} In support of this newly discovered evidence, appellant attached to his motion for leave the following documents: (1) his own affidavit, dated October 23, 2016, in which he averred that "[a]fter losing all [his] legal recourse based on [his] original trial," he began to seek out help on his case via the internet, with family and friends and anyone who could possibly help him with "free assistance"; that the Innocence Project took 20 months to respond and ultimately deny his request for help; that a friend asked McComas to review his case and that she obtained all the information he had in October 2015 and came to see him in December 2015 and inquired if he had any knowledge of Turner attempting to commit suicide in the past (Oct. 28, 2016 Motion for Leave to File, Ex. E.); (2) an affidavit of McComas, dated October 11, 2016, in which she averred she volunteered to help appellant on a pro-bono basis as an investigator in October 2015; that in early November 2015 she was contacted by Cleary who informed her that a former family member of Turner, who did not want to be identified, told him that Turner had previously attempted suicide by putting a gun to her head in summer 1997; and that she made a diligent effort to contact "witness Terrance Woods" and locate his current address, but he did not respond to her requests by phone and mail for an interview (Oct. 28, 2016 Motion for Leave to File, Ex. F.); (3) an affidavit of Cleary, dated November 28, 2016, in

which he averred that one of his "acquaintances" told him that Turner had attempted suicide in the late 1990s by putting a gun to her head and pulling the trigger, but it misfired, and Turner was in psychiatric care and her family knew about it; that he is appellant's pastor from Xenos Christian Fellowship and that the acquaintance who shared the above information requested his name not be mentioned to avoid conflict with the Turner family; and (4) a copy of a Division of Police Progress of Investigation Informational Summary of Homicide Detective Daniel McGahhey's June 10, 2006 interview of Jack T. Turner, the father of Turner; the summary indicates inter alia that Detective McGahhey asked whether Turner had ever attempted suicide and that in response Mr. Turner stated "that Christine had been hospitalized when she was approximately 15 years of age for alcohol abuse." (Oct. 28, 2016 Motion for Leave to File, Ex. G.)

{¶ 16} The trial court noted that appellant's knowledge of the evidence of a prior suicide attempt comes from hearsay sources. The court further observed that the evidence had nominal, if any, relevance to Turner's death because the prior suicide attempt is said to have occurred "long before her actual death" and there is a "complete dearth of evidence of *any* further attempts." (Emphasis sic.) (Jan. 3, 2017 Decision and Entry at 3.)

{¶ 17} As to this new evidence, the trial court did not address whether appellant was unavoidably prevented from discovering the evidence relied on in his motion. Instead, the trial court addressed and rejected appellant's arguments for a new trial on the merits finding the evidence to be irrelevant and hearsay. We caution against conflating the two distinct issues of the merits of whether appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering new evidence. *State v. Gaven*, 10th Dist. No. 16AP-645, 2017-Ohio-5524, ¶ 20. Nevertheless, we cannot say, on the facts of this case, that the trial court erred here with regard to its determination that the new evidence is hearsay.

{¶ 18} In *State v. Petro,* 148 Ohio St. 505 (1947), syllabus, the Supreme Court of Ohio set forth the following six-part test for determining whether a motion for new trial on the basis of newly discovered evidence should be granted:

> "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial

is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*State v. Anderson*, 10th Dist. No. 13AP-831, 2014-Ohio-1849, ¶ 9, quoting *Petro* at syllabus.

{¶ 19} Because this evidence of Turner's prior suicide attempt is hearsay, and therefore inadmissible, it would not disclose any probability that it would change the result if a new trial were granted. Thus, the trial court did not err in denying the motion for this reason.

## B. BLOOD SPATTER ANALYSIS

{¶ 20} Second, appellant represents he has discovered additional forensic evidence. He does not contend that this evidence, by itself, would merit a new trial. However, he argues that this evidence along with the newly discovered evidence of a prior suicide attempt would constitute "superior scientific evidence to rely upon in rejecting the theory of murder." (Appellant's Brief at 18.) Appellant argues that Dr. Amy Hawes is a board certified forensic pathologist with advanced degrees and medical training far beyond any obtained by the retired police officers, Gene Gietzen (on behalf of defendant) and Robert Young (on behalf of the state), who testified at trial.

{¶ 21} In support of this newly discovered evidence, appellant attached to his motion for leave the following documents: (1) an excerpt from a 2009 article titled "Strengthening Forensic Science in the United States – A Path Forward" by the National Research Council of the National Academies Committees on Identifying the Needs of the Forensic Science Community, on Science, Technology, and Law Policy and Global Affairs, and on Applied and Theoretical Statistics Division on Engineering and Physical Sciences; (2) an excerpt from an October 2012 article titled "Determining Distance Between Shooter and Victim Using Blood and Back Spatter Patterns" from the Michigan-Ontario Identification Association Newsletter; and (3) a letter dated February 26, 2016 from Dr. Hawes of Hawes Forensic Consulting to appellant's attorney in which Dr. Hawes opines "within medical certainty" and upon her "expert medical opinion" that Turner's "gunshot wound of the head is a self-inflicted wound." (Oct. 28, 2016 Motion for Leave to File, Ex. C.)

{¶ 22} The trial court opined there is nothing in the submitted articles that undermines the specific conclusions given as testimony. The court commented that Dr. Hawes presented nothing to indicate that she is a blood spatter expert and further opined that although Dr. Hawes stated in her report that the "location of the wound" is "characteristic of and commonly seen with self-inflicted gunshot wounds" and saw no evidence to suggest Turner's body was moved after her death, Dr. Hawes based her opinion on incomplete materials. The court noted that at trial the jury was presented with two blood spatter experts, one from each side, and that their testimony was supported and detracted from during trial.

{¶ 23} Again, as to this new blood spatter evidence, the trial court opined on the merits of the evidence. However, the court also opined as to the first criteria, whether appellant was unavoidably prevented from the discovery of the evidence. The trial court found that appellant was not unavoidably prevented from calling Dr. Hawes at his trial. He chose instead to call Gietzen who was qualified as a blood spatter expert. The court also opined as to the second criteria for granting leave, whether appellant filed the motion for leave within a reasonable time after discovering the new evidence. The court found that there is no indication why appellant took over nearly nine months to submit Dr. Hawes' opinions to the court, and that incarceration was not a valid excuse.

{¶ 24} We agree with the trial court that appellant could have called Dr. Hawes as a witness at his trial or further that appellant gave no explanation why he could not have. Appellant had the opportunity to call Dr. Hawes and did not do so; therefore, it cannot be said that he was "unavoidably prevented" from discovering this evidence or that he exercised "reasonable diligence" in attempting to discover the evidence. Therefore, we cannot find that the trial court abused its discretion in denying the motion for leave as to this evidence.

## C. ENHANCED 911 CALLS

{¶ 25} Finally, appellant argues that the 911 tapes are now "enhanced" and prove that it was appellant himself who was screaming in the background not to hurt or hit Turner. (Appellant's Brief at 20.) In support of this newly discovered evidence, appellant attached to his motion for leave the following documents: (1) a letter dated June 19, 2016 from Paul Jahn of LSS Incorporated, Litigation Support Services, to McComas of ZZ Agency in which Jahn "memorialize[s] the efforts made, and findings made relative to 911 audio files LSS handled for [McComas] in the month of July 2016," and indicates

ultimately that his efforts "will give the end listener a precise temporal relationship between the original [4] 911 calls"; (Oct. 28, 2016 Motion for Leave to File, Ex. D.) and (2) a supplemental affidavit of McComas, dated December 9, 2016, in which she averred that she made numerous efforts beginning in December 2015 to obtain the 911 tapes from the Franklin County Prosecutor, that she received the tapes on June 29, 2016, that the very next day she drove the tapes to LSS Incorporated, and that LSS Incorporated took three weeks to do the enhancement and she received the LSS Incorporated 911 report towards the end of July 2016.

{¶ 26} The trial court noted that Jahn states that his examination of the calls shows that two callers who called 911 "called * * * after the Defendant called to report [Turner's] death, and that the two callers mis-heard what the Defendant was saying ("help her" as opposed to "don't hit her.")." (Jan. 3, 2017 Decision and Entry at 5.) The trial court then opined that this evidence was not particularly important because considering the totality of the circumstances involved in the case, the crux of the case involved what was presented in the home—the position of the body, the blood spatter, etc.—and not the preliminary 911 calls.

{¶ 27} As to this 911 tape evidence, the trial court again addressed the merits, but as the trial court noted with regard to the blood spatter evidence, appellant could have called Jahn as a witness at his trial and did not. Further, appellant gave no explanation why he could not have done so. Appellant had the opportunity to call Jahn and did not do so, therefore it cannot be said that he was "unavoidably prevented" from discovering this evidence or that he "exercised reasonable diligence" in attempting to discover the evidence. Therefore, we cannot find that the trial court abused its discretion in denying the motion for leave as to this evidence.

{¶ 28} Accordingly, we overrule appellant's single assignment of error.

## IV. Conclusion

{¶ 29} Having overruled appellant's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.