[Cite as *State v. Graggs*, 2022-Ohio-3407.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 22AP-170 |
| | | (C.P.C. No. 08CR-1098) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| John Q. Graggs, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 27, 2022

**On brief**: [*Janet A. Grubb*, First Assistant Prosecuting Attorney], and *Kimberly M. Bond*, for appellee.

**On brief**: *John Q. Graggs*, pro se.

APPEAL from the Franklin County Court of Common Pleas

McGRATH, J.

{¶ 1} Defendant-appellant, John Q. Graggs, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a motion for new trial.

{¶ 2} On February 15, 2008, appellant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01, one count of kidnapping, in violation of R.C. 2905.01, one count of murder, in violation of R.C. 2903.02, and two counts of aggravated murder, in violation of R.C. 2903.01. The charges arose out of the shooting death of Fred Brock ("Brock") on January 8, 2008. The matter was tried before a jury beginning January 13, 2009.

{¶ 3} In *State v. Graggs,* 10th Dist. No. 10AP-249, 2010-Ohio-5716 ("*Graggs II*"), this court provided the following summary of the relevant facts of the case as follows.  In

2008, Marcus Jones ("Jones") leased an apartment on East Main Street from which he and a friend, Jessie Lanier ("Lanier"), "ran a drug trafficking operation, selling bricks of cocaine for approximately $28,000 each." *Id.* at ¶ 3. Approximately three days prior to the shooting, "Jones hired Brock, a friend of Lanier's, to help guard the cocaine and money kept in the apartment." *Id.*

{¶ 4} On the evening of January 8, 2008, Jones and his cousin Dominic attended a local high school basketball game, while Brock and Lanier remained in the apartment. Later, Lanier "joined the two men at the game." *Id.* at ¶ 4. After the game, at approximately 8:30 p.m., "Jones and his cousin drove to Jones' father's house." *Id.* At "[a]round 9:00 p.m., Jones received a call from Lanier telling him to return to his apartment." *Id.* Jones and his cousin arrived at the apartment at approximately 9:15 p.m. but "Lanier was not there." *Id.* However, about two minutes later, Lanier and a female arrived at the apartment. The three men entered the residence "and found Brock lying face-down on the floor inside the apartment; he had been handcuffed and fatally shot in the back. The apartment had been ransacked; $35,000 in cash and Lanier's revolver were missing." *Id.*

{¶ 5} Over "the next 15 minutes or so, Jones and Lanier cleared the apartment of items related to their drug trafficking operation, including $17,000 in cash hidden under the mattress in the bedroom." *Id.* at ¶ 5. Jones and Lanier took items out to Lanier's car, and Lanier "then drove away." *Id.* Jones and his cousin then went to a nearby recreation center and Jones called his father. At approximately 9:45 p.m., "Jones' father met the two men at the recreation center and urged them to call the police." *Id.* Jones and his cousin returned to the apartment and called 911.

{¶ 6} At approximately 9:54 p.m., police responded to the 911 call. Evidence collected by investigators at the scene "included the torn-off fingertip of a green latex glove found underneath Brock's body; the glove fingertip contained appellant's DNA." *Id.* at ¶ 6. During a subsequent search of appellant's residence, investigators recovered a "revolver and a green latex glove similar to the glove fingertip found at the scene." *Id.* It was later determined that the revolver was "not * * * the one that had fired any of the bullets recovered from the crime scene." *Id.*

{¶ 7} At the time of the events, appellant "was employed full-time earning $16.36 per hour." *Id.* at ¶ 7. Appellant "lived in a separate household from his wife and had difficulty paying his bills, including his car payment. However, on January 9, 2008, the day

after Brock's murder, appellant spent over $5,200 in cash at a local jewelry store," and on January 14, 2008, "he made a $2,900 payment on his car loan." *Id.*

{¶ 8}   Appellant was arrested on February 6, 2008, and "told police that he knew Brock, but had not seen him in ten years"; appellant "also stated that he had never been to Jones' apartment and did not even know where it was located." *Id.* at ¶ 8.

{¶ 9}   The parties entered into a stipulation at trial that, "on January 8, 2008, appellant made three calls between 7:42 and 7:43 p.m. from his cell phone in the vicinity of a cell tower one-half mile from Jones' apartment and made two calls on his cell phone between 8:54 and 8:57 p.m. in the vicinity of a cell tower near his home." *Id.* at ¶ 9.

{¶ 10}  At the close of its case, plaintiff-appellee, State of Ohio, dismissed the murder count; appellant "presented no witnesses or evidence." *Id.* at ¶ 10.  Following deliberations, the jury returned verdicts finding appellant guilty of aggravated robbery, kidnapping, and aggravated murder (both counts).  The trial court merged the aggravated murder counts for purposes of sentencing. By judgment entry filed March 4, 2009, the trial court sentenced appellant to eight years for aggravated robbery, eight years for kidnapping, and life without parole as to Count 5 (aggravated murder), with the sentences to run concurrently.

{¶ 11}  Appellant filed a direct appeal from the judgment, challenging his convictions as not supported by sufficient evidence and as against the manifest weight of the evidence. Appellant also raised a claim of ineffective assistance of counsel.  In *State v. Graggs,* 10th Dist. No. 09AP-339, 2009-Ohio-5975 ("*Graggs I*"), this court affirmed the judgment of the trial court.

{¶ 12}  On November 10, 2009, appellant filed a pro se petition for post-conviction relief, raising claims of ineffective assistance of counsel.  By entry filed February 16, 2010, the trial court denied appellant's petition, finding the claims were barred by res judicata or were without merit.  Appellant appealed the trial court's denial of his petition.  In *Graggs II*, this court affirmed the judgment of the trial court. Appellant filed a motion for reconsideration, which this court denied.

{¶ 13}  On August 8, 2013, appellant filed a motion for leave to file a motion for new trial, asserting newly discovered evidence.  Attached to appellant's motion was the affidavit of Kelvin Bridges, an inmate at the Correctional Reception Center ("CRC") in Orient. Bridges averred that, on the evening of January 8, 2008, he was in Lanier's apartment to

purchase cocaine and Lanier had questioned Brock about whether "he had been in the packages of cocaine," suggesting that "the information provided by Bridges demonstrated a motive for Lanier to kill Brock." *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 3 ("*Graggs III*"). The trial court, by entry filed September 24, 2013, denied appellant's motion for leave to file a motion for new trial, and appellant appealed that judgment. In *Graggs III*, this court affirmed the judgment of the trial court, and we later denied appellant's application for reconsideration.

{¶ 14} On March 24, 2015, appellant filed a second motion for leave to file a motion for new trial based on newly discovered evidence. In support of his motion, appellant attached the affidavit of Jamal Sealy, "another" inmate at CRC, who averred that, in June 2008, Lanier "confided in him that he killed Brock." *State v. Graggs*, 10th Dist. No. 15AP-480, 2015-Ohio-3990, ¶ 5 ("*Graggs IV*"). Sealy further averred he "did not discover appellant had been convicted of murdering Brock until October 2014." *Id.* Sealy stated that he told appellant about this conversation after he became aware they were both incarcerated at the same facility.

{¶ 15} On April 8, 2015, the trial court denied appellant's motion. In *Graggs IV*, this court affirmed the judgment of the trial court, holding in part that the affidavit filed by appellant in support of his motion did not disclose a strong probability that it would change the result if a new trial was granted. Appellant filed an application for reconsideration, which this court denied.

{¶ 16} On July 14, 2016, appellant filed a third motion for leave to file a motion for new trial based on newly discovered evidence. Attached to the motion was the affidavit of Michael Shepard who averred that he was in Lanier's apartment on the evening of January 8, 2008, and that he was in the bathroom when he heard shots fired. Shepard stated that he first told appellant about the events in 2016 while they were both incarcerated at the same facility. By entry filed August 1, 2016, the trial court denied appellant's motion for leave.

{¶ 17} On August 2, 2016, appellant filed another motion for leave to file a motion for new trial based on newly discovered evidence. The trial court denied that motion by entry filed August 4, 2016. Following an appeal, this court affirmed the judgment of the trial court in *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454 ("*Graggs V*").

{¶ 18} On January 22, 2018, appellant filed a "successive" petition for post-conviction relief. By entry filed April 11, 2018, the trial court denied appellant's successive petition, and appellant appealed that judgment. In *State v. Graggs,* 10th Dist. No. 18AP-491, 2019-Ohio-361 ("*Graggs VI*"), this court reversed the judgment of the trial court on the basis that it denied the petition without considering the affidavit of Albert Mullins who stated in his affidavit that he had collected used latex gloves from his worksite job (working with appellant) and had taken them to the apartment where Brock had been shot to be reused. Following this court's remand, the trial court issued a journal entry denying appellant's successive petition for post-conviction relief, and appellant appealed that judgment. In *State v. Graggs,* 10th Dist. No. 19AP-173, 2019-Ohio-4694 ("*Graggs VIII*"), this court affirmed the judgment of the trial court.

{¶ 19} On November 20, 2018, appellant filed with this court an application for reopening pursuant to App.R. 26(B). This court denied the application as untimely. *See State v. Graggs,* 10th Dist. No. 09AP-339 (Nov. 20, 2018) (memorandum decision) ("*Graggs VII*").

{¶ 20} On November 25, 2019, appellant filed a motion for leave to file a motion for new trial based on newly discovered evidence. Specifically, appellant argued that the new evidence "is an affidavit from Albert Mullins in which Mullins admits that he physically transferred discarded latex gloves of Graggs' in to Marcus Jones' apartment on numerous occasions within the ninety (90) days preceding the crimes." (Nov. 25, 2019 Mot. for Leave at 2.) Appellant argued he did not become aware of this information until August 2017, when Mullins "ran into [appellant]" at CRC. (Nov. 25, 2019 Mot. for Leave at 4.) The state filed a memorandum contra appellant's motion, arguing there was no showing he was unavoidably prevented from discovering the evidence through reasonable diligence.

{¶ 21} By entry filed June 30, 2020, the trial court denied appellant's motion for leave to file motion for new trial, holding that the affidavits of appellant and Mullins "do not demonstrate by clear and convincing evidence that [appellant] was unavoidably prevented from the discovery of the evidence upon which he now seeks to rely." (June 30, 2020 Entry at 8.) Appellant did not timely appeal that decision, and he subsequently filed with this court a motion for leave to file a delayed appeal. On November 17, 2020, this court denied appellant's motion.

{¶ 22} On August 10, 2021, appellant filed a motion for leave to file an untimely motion for new trial based on newly discovered evidence. In the accompanying memorandum in support, appellant argued the newly discovered evidence "is an affidavit from Leroy S. Brown, Jr., in which Brown admits that he physically transferred discarded latex gloves of Graggs into the apartment where Jessie Lanier (Mook) sold crack out of on East Main Street before the date of the crimes." (Aug. 10, 2021 Mot. for Leave at 2.) Appellant argued that his discovery of this information was "clearly a result of luck and happenstance" after he "ran into Brown" at CRC in July 2021, and Brown "struck up a conversation" with him. (Aug. 10, 2021 Mot. for Leave at 5.)

{¶ 23} On September 15, 2021, the state filed a memorandum in opposition to appellant's motion for leave. By entry filed December 30, 2021, the trial court denied appellant's motion for leave to file a motion for new trial.

{¶ 24} On appeal, appellant sets forth the following two assignments of error for this court's review:

> [I.] THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DISMISSED MR. GRAGGS' MOTION FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL WHEN THE RECORD SHOWED THAT (1) MR. GRAGGS WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THE EVIDENCE OFFERED BY BROWN.
>
> [II.] THE TRIAL COURT ABUSED ITS [DISCRETION] WHEN IT DISMISSED MR. GRAGGS' MOTION FOR LEAVE TO FILE A MOTION FOR NEW TRIAL WITHOUT A HEARING.

{¶ 25} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the trial court's denial of his motion for leave to file a motion for new trial, and further contends the court erred in failing to conduct a hearing on his motion.

{¶ 26} Under Ohio law, "[a] trial court's ruling on a motion for leave to move for a new trial is reviewed for an abuse of discretion." *State v. McNeal*, ___ Ohio St.3d ___, 2022-Ohio-2703, ¶ 13.[1] The decision by a trial court " 'whether to conduct an evidentiary hearing on a motion for leave to file a motion for a new trial is discretionary and not

---

[1] Similarly, an appellate court "reviews a trial court's decision granting or denying a Crim.R. 33 motion for new trial for an abuse of discretion." *State v. Noor*, 10th Dist. No. 16AP-340, 2016-Ohio-7756, ¶ 9.

mandatory.' " *State v. Ambartsoumov*, 10th Dist. No. 12AP-878, 2013-Ohio-3011, ¶ 13, quoting *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, ¶ 54. More specifically, "[a] criminal defendant 'is only entitled to a hearing on a motion for leave to file a motion for a new trial if he submits documents which, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence at issue.' " *Id.*, quoting *Cleveland*, citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶ 7 (2d Dist.).

{¶ 27} Crim.R. 33(A) "provides the grounds on which a trial court may grant a defendant a new trial." *McNeal* at ¶ 14. At issue in this case are the grounds set forth under Crim.R. 33(A)(6).

{¶ 28} Crim.R. 33 states in part:

> (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially the defendant's substantial rights:
>
> * * *
>
> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial.

{¶ 29} Thus, "[u]nder Crim.R. 33(A)(6), a trial court may grant a motion for new trial based on the discovery of new evidence material to the defense that the defendant could not, with reasonable diligence, have discovered and produced at trial." *State v. Brodbeck*, 10th Dist. No. 17AP-61, 2017-Ohio-7187, ¶ 10, citing *Graggs III* at ¶ 5. Under Ohio law, " ' "[n]ewly discovered evidence" is "evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant." ' " *Id.*, quoting *State v. Holzapfel*, 10th Dist. No. 10AP-17, 2010-Ohio-2856, ¶ 10, quoting *State v. Love*, 1st Dist. No. C-050131, 2006-Ohio-6158, ¶ 43.

{¶ 30} Crim.R. 33(B) states in part:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven

days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 31} Under Crim.R. 33(B), "when a new-trial motion is premised on newly discovered evidence, the defendant must file the motion within 120 days of the date of the jury's verdict." *McNeal* at ¶ 15. However, "Crim.R. 33(B) excuses a defendant's failure to move for a new trial within the * * * 120-day deadline * * * if the defendant proves by clear and convincing evidence that he or she was unavoidably prevented from discovering the evidence on which the motion would be based within that time." *Id.* at ¶ 16. A defendant is unavoidably prevented from discovering new evidence if he "had no knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial." *State v. Lundy*, 10th Dist. No. 19AP-505, 2020-Ohio-1585, ¶ 11.

{¶ 32} In order to warrant the granting of a motion for new trial in a criminal case based on grounds of newly discovered evidence, a defendant must show that the new evidence: "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 33} In support of his claim of newly discovered evidence, appellant attached to his motion for leave his own affidavit and the affidavit of a fellow inmate, Leroy S. Brown. The trial court, in its entry denying appellant's motion for leave to file a motion for new trial, summarized the evidence set forth under the affidavits as follows:

> Apparently in mid-2021 while incarcerated at the CRC in Orient, Ohio Mr. Graggs had a conversation with a man known to him only as "Philly." That was "the first time I had a full conversation with Philly since 2007." (Graggs Aff'd. ¶¶ 8-10). Graggs learned "Philly's" real name was Leroy Brown, a fellow inmate.
>
> As alleged in previous motions, Mr. Graggs' discussion with Mr. Brown turned to the circumstances involved in Graggs' murder conviction. "I revealed to him that I was convicted primarily because the state claimed to find the fingertip of a latex glove that had my DNA" at the murder scene in Whitehall.

(¶ 13). He points out once again that he did odd jobs "like washing cars and detailing, painting of houses, gutting of houses, some plumbing work, replacing dry wall and removing trees" and "always wore and passed out latex gloves to everyone who worked for me on these jobs." (¶¶ 4-5). Graggs claims he was surprised to learn that Brown took used latex gloves after doing odd jobs with Graggs and others to the apartment where the murder occurred "to pack crack in when he would buy crack from Jessie [Lanier], always leaving the latex gloves he did not use in the apartment. (¶ 14). Mr. Graggs claims he was "totally surprised by what Brown had told me. At no time did I have reason to ever think that Brown or anyone else had a reason to take used latex gloves, which were trash, to be reused in some way again." (¶ 19.)

Leroy Brown's affidavit says that "[p]art of 2007, I stayed in the area of the Motel One on East Main Street, I was homeless." (Brown Affidavit, ¶ 1) (*sic*). He and others hung around a gas station at James Road and East Main Street asking customers for spare change and, at times, working "on some jobs with John [Graggs], hanging dry wall, gutting homes and painting." "It was common knowledge with the guys that worked for John that he had a thing about wearing and passing out latex gloves while working" such that Mr. Brown would take used latex gloves – "which included the glove of John's" – to the apartment where Jesse [Lanier] sold crack. (¶¶ 6-7). While there, Brown would buy crack from Lanier, and then re-sell smaller amounts to crack smokers in the general area of his Motel. (¶¶ 12-14.)

Interestingly, Mr. Brown puts the time at which he "did this [as] 6 or 7 times before the end of December 2007, because I was only in that area for a few months." (¶ 19). He also says that "because I wanted to go home to Philadelphia for the holiday" he "worked for John a few days that week before I left." (¶ 20). This suggests he was gone by Christmas of 2007. The murder did not occur until January 8, 2008.

(Dec. 30, 2021 Entry at 2-3.)

{¶ 34} The trial court, in addressing appellant's theory under his motion for leave, found that the motion "rehashes the same argument that has been repeatedly rejected in response to his prior motions." (Dec. 30, 2021 Entry at 3.) Specifically, the court held, while appellant "has been successful in identifying numerous people who might have transported a used latex glove with his DNA into Jesse Lanier's apartment before the

murder, both this court and the Court of Appeals have recognized that does not eliminate Graggs or provide more than an argument he was wrongfully convicted." (Dec. 30, 2021 Entry at 3.) The trial court further observed: "No matter how many former customers of the crack cocaine apartment Graggs happens across in prison, they all tell essentially the same story. That story was squarely presented at Graggs' trial by his defense counsel [and] [t]he jury did not buy it." (Dec. 30, 2021 Entry at 3.) The court also noted that "[p]revious decisions rejected arguments that trial counsel for Mr. Graggs was ineffective." (Dec. 30, 2021 Entry at 3.)

{¶ 35} In considering the affidavit evidence, the trial court concluded "the record does not demonstrate by clear and convincing evidence that [appellant] was unavoidably prevented from presenting evidence essentially identical to that upon which he now seeks to rely." (Dec. 30, 2021 Entry at 8.) The trial court also held that appellant's proposed evidence was not newly discovered, and that "the Philly Brown affidavit is 'merely cumulative to former evidence' " under the test in *Petro*. (Dec. 30, 2021 Entry at 8.)

{¶ 36} As to the claim he was unavoidably prevented from timely discovering what he contends to be new evidence, appellant maintains he could not have discovered the information contained in Brown's affidavit until he "ran into Brown in prison." (Appellant's Brief at 6.) He further asserts "[t]he practice of collecting discarded used latex gloves to be used again in the drug trade is not common knowledge, and under any reasonable person prudent standard [sic] it is totally unreasonable to assume that one would have knowledge that this would be done." According to appellant, "until 2017, nine (9) years after Graggs' conviction, when [Albert] Mullins informed [appellant] that he had collected and took used latex gloves from the car wash[] to the Whitehall apartment [appellant] lacked the knowledge that these circumstances existed, and had no reason to believe or suspect that anyone was collecting his used latex gloves to be used for any purpose." (Appellant's Brief at 7, 8.)

{¶ 37} In response, the state argues the record indicates appellant knew, prior to trial, that others took his latex gloves into the apartment. The state contends appellant could have called any number of witnesses at trial to support this theory, and further notes the trial court found the decision by his trial counsel not to present such witnesses at trial was intentional. The state also cites appellant's prior affidavit in which he acknowledged telling his trial counsel about various individuals he worked with at a car wash (including

Albert Mullins); the state maintains that appellant, based on averments in his prior affidavit alone, cannot show he was unavoidably prevented from discovering witnesses who could have offered testimony about the latex gloves.

{¶ 38} On review, we find the trial court could have reasonably concluded appellant failed to show by clear and convincing evidence that he had no knowledge of the existence of the offered evidence and could not have discovered it by the exercise of reasonable diligence. In the present case, the same judge who presided over appellant's trial also addressed appellant's prior multiple motions, including a 2019 motion for leave to file a motion for new trial supported by the affidavit of Mullins who, similar to the statements by Brown in the instant action, averred that he had worked with appellant and had taken latex gloves from the workplace to the subject apartment to be reused for drug activity. In that prior motion, as well as the motion in the instant case, appellant submitted similar affidavits stating he was "totally surprised" by what Brown (and Mullins) told him, and that "[a]t no time did I have reason to ever think that Brown or anyone else had a reason to take used latex gloves, which were trash, to be reused in some way again." (Appellant's July 27, 2021 Aff. at ¶ 19.)

{¶ 39} As noted by the trial court, however, in a previous affidavit filed by appellant, he "testified that before trial he brought all of this up with his counsel, pointing out that an 'African woman * * * could verify that I wore the latex gloves during the times that I washed cars,' " and that "he gave his trial lawyers 'a list of three guys who knew that I used latex gloves while washing cars at the car wash that had worked for me, which included Albert Mullins.' " (Dec. 30, 2021 Entry at 5.) Appellant also "recognized in pretrial preparations with his two lawyers that there was an argument available 'that someone [else] could have tracked the fingertip in to the apartment.' " (Dec. 30, 2021 Entry at 5.)

{¶ 40} The trial court found the record demonstrated appellant and his defense counsel "were all aware of the multitude of people who visited the apartment to buy crack cocaine, and people with whom [appellant] did odd jobs in the area of the murder and provided latex gloves." (Dec. 30, 2021 Entry at 5.) The trial court also cited the fact appellant "knew 'Philly' was yet another person from the neighborhood who could have been called at [appellant's] trial to testify to use of latex gloves." (Dec. 30, 2021 Entry at 3.) Further, while appellant contends it is "totally unreasonable" to assume that one would have knowledge that latex gloves are used in the drug trade, such evidence was, as noted by

the trial court, presented during his trial. Specifically, this issue was explored during the testimony of Jones, in which he testified as to his practice of keeping latex gloves in the apartment "[t]o break down cocaine." (Tr. at 401.) Jones also testified during trial that he knew an individual named Albert Mullins, and that he "used to stay at the house." (Tr. at 394.)

{¶ 41} On the record presented, we find the trial court did not err in its determination that appellant failed to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the new evidence he relies upon. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a motion for new trial.

{¶ 42} Even assuming, however, appellant had provided clear and convincing proof he was unavoidably prevented from discovering the facts upon which he relies, we agree with the trial court's further determination that such evidence was not newly discovered, as it was cumulative to former evidence. On this issue, we initially address appellant's contention that the trial court erred in considering the "fifth * * * element" of the *Petro* factors, arguing that, until a court grants a motion for leave, the merits of a motion for new trial are not properly before the trial court. (Appellant's Brief at 13.)

{¶ 43} Appellant previously raised the same argument in *Graggs III*, in which the trial court, in ruling on appellant's motion for leave to file a motion for new trial, held that appellant failed to establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the time period permitted, but further concluded that the alleged newly discovered evidence did not establish a strong probability of a changed result if a new trial were granted (i.e., under the first *Petro* factor). In that appeal, appellant argued "the *only* issue before the court below was whether he was unavoidably prevented from discovering the evidence relied upon in support of his motion for new trial and that the court abused its discretion in this case by going beyond that initial inquiry." (Emphasis sic.) *Graggs III* at ¶ 8.

{¶ 44} In *Graggs III*, this court "reject[ed] appellant's argument as an unduly narrow reading of Crim.R. 33 and the two-step procedure for untimely filing of a motion for a new trial," holding in part:

> This court has previously affirmed judgments in cases where
> the trial court denied leave to file an untimely motion for new

trial based on the movant's failure to demonstrate that he was unavoidably prevented from discovering the evidence in question and where the trial court also addressed the underlying merits of the argument in favor of a new trial. *See, e.g., State v. Stepherson,* 10th Dist. No. 13AP-282, 2013-Ohio-5396, ¶ 17 ("The trial court also addressed the merits of the motion for new trial, holding that a new trial was not warranted in light of this court's prior determination that any error as to the admissibility of the eyewitness identification of Curry-Meinen was harmless. We agree."); [*State v.*] *Bethel*[,] [10th Dist. No. 09AP-924, 2010-Ohio-3837,] ¶ 16 ("[T]he trial court addressed not only the motion for leave to file a motion for new trial, but also the merits of the motion for new trial based on newly discovered evidence."). In circumstances such as those presented in this case, where a trial court denies a motion for leave because it concludes that the movant failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering the alleged newly discovered evidence, the trial court does not necessarily abuse its discretion by also addressing the merits of the movant's argument in favor of a new trial. * * *

*Id.* at ¶ 9.

{¶ 45} Subsequent to *Graggs III*, while this court has cautioned against "conflating the two distinct issues of the merits of whether appellant is entitled to a new trial rather than addressing the threshold issue of whether appellant was unavoidably prevented from discovering new evidence," we have nevertheless found no abuse of discretion by a trial court in denying a motion for leave to file a motion for new trial where the trial court considered the merits of a defendant's new trial argument. *Brodbeck* at ¶ 17 (noting that, while the trial court did not address whether the appellant was unavoidably prevented from discovering the evidence relied on in denying his motion for leave, the trial court did not err in rejecting appellant's arguments for a new trial on the merits based on the first *Petro* factor). *See also State v. Hoover-Moore*, 10th Dist. No. 14AP-1049, 2015-Ohio-4863, ¶ 15, 21 (while trial court denied motion for leave without addressing whether appellant was unavoidably prevented from discovering the evidence she relied on in her motion, court did not abuse its discretion in denying motion because appellant's evidence "does not satisfy the *Petro* requirements in order to warrant the granting of a new trial based on newly discovered evidence"). Accordingly, and as previously held in *Graggs III*, appellant's

argument that the trial court erred in considering the *Petro* factors is unpersuasive as it rests on "an unduly narrow reading of Crim.R. 33." *Graggs III* at ¶ 9.

{¶ 46} In the present case, in rejecting appellant's claim that the affidavit of Brown constituted newly discovered evidence, the trial court determined appellant "knew before his trial of the DNA found in a scrap of latex glove under the victim's body; that many people were given gloves while washing cars or doing other odd jobs with him; and of the use of latex gloves to handle narcotics at the murder scene." (Dec. 30, 2021 Entry at 8.) As previously cited above, the court considered the fact that appellant and his defense were aware, at the time of trial, of the "multitude of people who visited the apartment to buy crack cocaine," and the individuals with whom appellant "did odd jobs in the area of the murder and provided latex gloves." (Dec. 30, 2021 Entry at 5.)

{¶ 47} The trial court analyzed the claim of "newly discovered" evidence in the context of the defense strategy.[2] Specifically, the court observed, while trial counsel did not "subpoena any of those potential witnesses," the questioning of witnesses at trial "gave the jury some information about narcotics and latex gloves at the murder scene, down to whether green or blue gloves were used to handle drugs in the apartment," and the trial itself "referenced the many people purchasing drugs or otherwise involved in drug-dealing at the murder scene." The trial court found that the decision of trial counsel to defend the case "without calling the African woman, Mullins[,] or apparently even knowing about Philly Brown," permitted trial counsel to "explicitly argue[] about the multiple people and multiple gloves in the apartment," thereby "avoid[ing] serious credibility issues with people like Brown who were visiting the scene while buying and selling crack cocaine." In concluding such evidence was not newly discovered, the trial court noted that "[l]eaving aside Philly Brown, * * * four people acknowledged previously by Mr. Graggs could have provided exactly the same evidence to back up the 'anyone could have taken a latex glove previously touched by Graggs into the apartment' argument." (Dec. 30, 2021 Entry at 5, 6.)

{¶ 48} Thus, in reviewing the evidence submitted, the trial court determined the alleged newly discovered evidence was either known to appellant and his counsel or readily obtainable, and that the trial strategy was to not call witnesses with a drug history (i.e.,

---

[2] As previously noted, the same judge who denied appellant's motion for leave to file a motion for new trial in the present case also presided over appellant's trial (and ruled on various other motions filed by appellant, including the 2019 motion for leave to file a motion for new trial containing the affidavit of Albert Mullins).

while potential witnesses such as Mullins may have been available through due diligence, counsel chose not to pursue this tactic). In this respect, a decision by trial counsel not to call witnesses or pursue certain information based on " 'a tactical decision' " is not deemed to be newly discovered evidence. *State v. Solat*, 10th Dist. No. 96APC06-815 (Jan. 30, 1997) ("the belated inquiry into information of which the defense had long been aware does not constitute 'new evidence' within the meaning of Crim.R. 33"); *State v. Jones*, 8th Dist. No. 81112, 2003-Ohio-3004, ¶ 71 (affirming trial court's denial of motion for new trial where defense counsel "made a tactical decision not to call an unreliable and questionable witness to the stand").

{¶ 49} The trial court further determined the affidavit evidence of Brown (similar to the earlier affidavit of Mullins) was cumulative to the defense theory that the jury heard and found unconvincing as well as to what defense counsel could have presented at trial. We agree that such evidence is "cumulative in nature," and not newly discovered, as it seeks to "bolster" the strategy/argument by counsel at trial, i.e., that various drug users frequented the apartment and that latex gloves were brought into the apartment for drug activity. *State v. Nahhas*, 11th Dist. No. 2001-T-0045, 2002-Ohio-3708, ¶ 31-32 (affidavits submitted "merely to bolster" arguments made at trial were cumulative and "not newly discovered evidence under the requirements set forth by the Supreme Court of Ohio"). On review, we agree with the trial court that the "new" evidence was cumulative to the defense theory as well as to what the defense could have presented at trial (but chose not to), and we find no abuse of discretion by the trial court in its determination that the affidavit evidence was not newly discovered.

{¶ 50} Appellant also asserts the trial court erred in denying his motion for leave to file a motion for new trial without an evidentiary hearing. This contention is unpersuasive.

{¶ 51} As discussed above, the trial court did not abuse its discretion in concluding appellant failed to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the alleged newly discovered evidence, nor did the court err in its determination that such evidence is not newly discovered. Under circumstances in which "the actual content of the affidavit could not form the basis of a new trial," a trial court does not abuse its discretion in failing to conduct a hearing on the issue whether the appellant was unavoidably prevented from filing his motion on time. *State v. Williams*, 7th Dist. No. 14 JE 13, 2015-Ohio-2687, ¶ 5. *See also State v. Barrow*, 8th Dist. No. 103331,

2016-Ohio-2839, ¶ 11 (trial court did not abuse its discretion in denying motion for leave to file a motion for new trial without an evidentiary hearing where appellant did not produce newly discovered evidence); *State v. Williams,* 8th Dist. No. 99136, 2013-Ohio-1905, ¶ 18 (trial court properly denied motion for leave to file a motion for new trial without a hearing where "the 'newly' discovered evidence * * * was cumulative of other evidence disclosed to the defense and/or presented to the jury at trial"). In light of the above determinations and the record presented, we find no abuse of discretion by the trial court in declining to hold a hearing on the motion for leave to file a motion for new trial.

{¶ 52} Based on the foregoing, appellant's two assignments of error are without merit and are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

BEATTY BLUNT & MENTEL, JJ., concur.

_____